SMYTHE v. STATE.

[86 South. 870, No. 21183.]

1. HEALTH. *Regulation requiring physicians to file morbidity report monthly held not unreasonable.*

Under Code of 1906, section 2489 (Hemingway's Code, section 4838), empowering the State Board of Health to make and publish all reasonable rules and regulations necessary to enable it to discharge its duties and powers and to carry out the purposes and objects of its creation, a regulation requiring every licensed physician practicing in the state to file a morbidity report on the first day of each month is not unreasonable.

2. HEALTH. *Where physician charged with violating State Board of health rule had no knowledge thereof, peremptory instruction should be granted.*

In the prosecution of a physician for knowingly violating a rule or regulation of the State Board of Health, where the evidence wholly failed to show that defendant had knowledge of the existence of the regulation, or that there had ever been any such publication of the regulation as to charge defendant with knowledge thereof, a peremptory instruction requested by defendant should be granted.

APPEAL from circuit court of Washington county. HON. D. E. BEAMS, Judge.

E. C. Smythe was convicted of violating a regulation of the State Board of Health, and he appeals. Reversed, and appellant discharged.

*Fred H. Lotterhos,* for State.

The certified copy of the regulations over the hand of the secretary of the state board of health was introduced in evidence and the objection that this cannot be taken as evidence of a valid regulation in the absence of proof of publication would seem to be of no force. In the first place the statute does not make it mandatory that the regulations authorized to be made shall be published. The state board of health is authorized to make and publish rules and regulations, but there is no provision that the rules and regulations shall not be in force until published, if the board see fit to exercise its authority to publish. The word "publish" means to make or give to the public, not to keep private or secret and does not necessarily mean to publish by printing in a newspaper.

This court has said in *Corinth* v. *Sharp,* 107 Miss. 696, quoting Dillon on Municipal Corporations, that, in the absence of a statutory or charter provision, ordinances be published before they take effect, no publication is necessary. However, if we yield, for the sake of argument, that the state required publication other than the mere passage of the regulation and its being made a matter of public record in the office of the state board of health, this appellant cannot complain that the state did not affirmatively prove the publication, for the presumption of law is that it was published, and no effort was made to show that it was not. This court said, in *Chrisman* v. *City of Jackson,* 84 Miss. 787, that it did not concede that after proof had been made of the existence of a city ordinance and that it had been regularly adopted, that it still devolved upon the city to show that the ordinance had in fact also been published. In case of ancient ordinances this would often be impossible.

The personnel of the state board of health is constantly changing and the present members of the board would be without means to prove the actions of former members other than by the public records in the office. Every presumption of law is that the incumbents at the time of the passage of the regulations did all that the law required. See *Ross* v. *Wimberly,* 60 Miss. 345; also *Ex parte John Devine,* 74 Miss. 715, and 22 Corpus Juris, page 130, where it is stated: "there is always a presumption that official acts or duties have been properly performed." This text is supported by hundreds of cases shown in the notes including a large group of Mississippi cases found at page 132. Indeed, any other rule would render futile all efforts of the legislature to function through boards, commissions and municipalities which exist through indefinite time, and show official functions are discharged by officers with temporary tenure.

It is reasonable to assume that everything necessary to be done about the adoption of the regulations was done, and if a fatal omission was made lying behind the face of the record, it must avail the appellant nothing unless he produced evidence to satisfy the court of the irregularity.

The statutes, of which all men have notice, make it plain that physicians, in the matter of certain diseases, are subject to the regulations of the state board of health and must make certain reports even without regulations by the state board of health. And it would seem that one taking up the practice of medicine in Mississippi without having ascertained the requirements resting on that profession cannot be heard to say that he does not know the regulations of the state board.

It will be remembered, too, that the appellant's name is on the mailing list, and according to the custom detailed by the present secretary, presumably got all the publications that other physicians in Mississippi did; and too, he has been the representative of the state board in the gathering of vital statistics, and was told by former county health officers of the time at which they had to make

their reports.   In the light of all this it would seem that appellant cannot be heard to say that so far as the record goes, the regulations were not published or that he had no notice of what they were.

The secretary, who is the ordinary custodian of the records of any board, certified to the regulations introduced in evidence to the effect that they were a true and correct copy of the rules and regulations governing infectious diseases and sanitation, of the Mississippi state board of health then in force and effect.   This is a comprehensive certification of the regulations and the construction will be given, a certificate offered in evidence which will justify the acts of the officers.   See *Hardin* v. *Ho-Yo-Po-Nybby*, 27 Miss. 567, and *Parker* v. *Railroad Company*, 111 Miss. 669.   The trial court deemed this certificate sufficient to establish the correctness of the rules introduced and should not be overruled in that exercise of discretion.

*Wasson, Pritchett & Nelson,* for appellant.

We contend that this defendant, and other physicians in the state, were entitled to notice of the existence of any rule which the state board of health seeks to require him or them to follow.   The legislature recognizing this right of the defendant, and other physicians in the state of Mississippi, provided in Section 4838, *supra*, that said board be authorized to make and publish all reasonable rules and regulations, etc., and our contention is that any action said board of health might take along this line would not become any rule or regulation to bind the physicians of the state until the board had done all the statute required, that is, made, and published the rule.

But the assistant attorney-general insists that inasmuch as a certified copy of certain pretended rules and regulations are in evidence in this record, they must be taken as having been properly passed and adopted in the absence of an affirmative showing to the contrary.   We might grant, for the sake of argument, that the evidence in the

form of a certified copy of the pretended rules and regu-lations as adopted by the state board of health was a full and complete showing upon the part of the state of the passage and adoption of said rules by the said board, but we insist that the said certificate of the passage and adop-tion of the rules does not prove or tend to prove a pub-lication of the rules, the very thing necessary to give this defendant and other physicians in the state notice of the existence of such rules.

This defendant could not knowingly violate unless he had some knowledge of the existence thereof, and the means of imparting that knowledge by the state board, made so by statute, is by publication. It would seem to us that it would be just as necessary for the state to prove a publication as it was to prove that the rule in question was, as they say, passed and adopted by the board, and it certainly will not be contended that this defendant could have been convicted unless the state had made a positive showing that such rule had been passed and adopted by the board, but, it is said by the learned assistant attorney-general that the statute does not make it mandatory that the rules and regulations authorized to be made shall be published, evidently giving to the word "authorized" the meaning "may;" that is that the board, by this statute, is given a discretionary power in the matter as to whether it shall publish its rules. If this be true, then we must extend this discretion to the making of rules as well, so that the board need not make any rules. Our contention is that the word "authorized" refers to the words "make" and "publish" with equal force. We contend "authorized" as here used, is mandatory as it refers to both the making and the publishing of the rules by the board of health, so that the words "the board" is authorized to make and publish such rules and regulations, etc., should read, when we come to construe the statute, the state board of health shall make and publish such rules and regulations, etc. It is said in Volume 20, American & English Ency. Law, page 239, sec. 2: The word "may" or "authorized"

in a statute will be construed to mean "shall" or "must" whenever the rights of the public or of third persons depend upon the exercise of the power to perform the duty to which it refers; and such is the meaning in all cases where the public interests and rights are concerned, or where a public duty is imposed upon public officers, and the public or third persons have a claim *de jure* that the power shall be exercised. Or, as the rule is sometimes expressed, whenever the statute directs the doing of a thing for the sake of justice or the public good, the word, "may" or "authorized," will be read "shall." Where to give the ordinary meaning to the word "may" would render the statute in which the term is used nugatory, an imperative meaning must be given to the word, and it has been said that "may" in a statute is generally construed to have the same meaning as the word "shall."

And so the word "authority" or "authorize" as used in section 4838, *supra,* in regard to the board's power to make and publish rules and regulations, is synonymous with "duty" and "obligation." 3 Amer. & Eng. Ency. Law (2 Ed.), page 516; *Baltimore* v. *Marriatt,* 9 Md. 174; *Baltimore* v. *Pendleton,* 15 Md. 17; *People* v. *San Francisco,* 36 Cal. 600; *Gilmore* v. *Utica,* 121 N. Y. 561.

Again in a statute the word "may" will be construed in a mandatory sense (and so the word "authorize") when such construction is necessary to give effect to the clear policy and intention of the legislature. It seems to us that it must be conceded that the whole purpose of the legislature, as set out in chapter 116, Hemingway's Code, under the caption "Health and Sanitation" is intended for the public good.

Every practicing physician in the state of Mississippi is interested in and subject to the control of the particular rule under discussion in this case, and it seems to us that it was the clear intention of the legislature that the rule should be made and published to enable the board, as said in the enactment, to discharge its duties and powers and to carry out the purposes and objects of its creation.

And so we reiterate that it was necessary that this rule, for the violation of which the defendant has been convicted, before it could become operative, must have been made and published by the board.

We readily adopt the definition of the word "publish" as given by the learned counsel for the state "make or give to the public" and we insist there is no showing in the record in this case, upon the part of the state, that this rule was ever given to the public. We concede that a publication in a newspaper was not necessary, but we do contend that some sort of publication—"a giving to the public"— was necessary, and that it was incumbent upon the state in the prosecution of the defendant to show such publication, or a giving to the public of the existence of the rule.

W. H. COOK, J., delivered the opinion of the court.

Dr. E. C. Smythe, appellant, was convicted for unlawfully and knowingly violating a rule or regulation of the state board of health, and from the judgment sentencing him to pay a fine and costs he prosecuted this appeal. The affidavit upon which this prosecution was based charged that—

"On or about the 1st day of October, A. D. 1919, E. C. Smythe, being then and there a licensed practicing physician, did, then and there, unlawfully and knowingly fail and neglect to report to the county health officer of said county whether or not, during the preceding month, he attended any notifiable diseases as scheduled in section 2 of the rules and regulations of the Mississippi State Board of Health governing infectious diseases and sanitation, contrary to the rules and regulations of the said Board of Health."

A certified copy of the rules and regulations of the state board of health governing morbidity reports was introduced in evidence. Section 1 of these regulations makes it the duty of the county health officer to secure a report from physicians each month of the diseases named in section 2

thereof, while section 2 lists various diseases which shall be notifiable. Section 3 of these regulations makes it the duty of every licensed physician practicing in this state to report to the county health officer on the 1st day of the month all notifiable diseases treated by him during the previous month, while section 10 provides that any physician who shall fail, neglect, or refuse to comply with any of the provisions of the rules and regulations of the state board of health, upon conviction, shall be guilty of a misdemeanor, and subject to the penalty provided in section 2511, Code of 1906.

Section 2489, Code of 1906 (Hemingway's Code, section 4838), confers upon the state board of health the power to make and publish rules and regulations, and is as follows:

"The state board of health is authorized to make and publish all reasonable rules and regulations necessary to enable it to discharge its duties and powers and to carry out the purposes and objects of its creation, and reasonable sanitary rules and regulations, to be enforced in the several counties by the county health officer under the supervision and control of the state board of health."

The penalty for violating the rules and regulations of the state board of health is set forth in section 2511 of the Code of 1906 (Hemingway's Code, section 4860), which is as follows:

"Any person who shall knowingly violate any of the provisions of this chapter, or any rule or regulation of the state board of health, or any order or regulation of the board of supervisors of any county herein authorized to be made, shall be guilty of a misdemeanor, and on conviction shall be punished by fine not exceeding fifty dollars, or imprisoned in the county jail not more than one month, or both."

There is no merit in the contention of appellant that the rule requiring morbidity reports to be made on the 1st day of each month is unreasonable. The purpose of this regulation is to enable the health authorities to take proper and prompt measures for the prevention and spread of

disease, and to promote the general health of the people. This regulation is not only reasonable, but it is an important and valuable aid in the preservation of the public health.

We think, however, that the testimony in this record is insufficient to sustain this conviction. The offense denounced by the statute is the violation of the regulations of the Board of Health knowingly, and this evidence wholly failed to show that the defendant had any knowledge of the existence of the rule or regulation, or that there had ever been any such publication thereof as to charge him with knowledge of it. The only attempt to show any sort of publication of the rule, or that the defendant had knowledge thereof, is found in the testimony of Dr. R. W. Hall, who was a witness for the state, and who testified that there was in the office of the state board of health a mailing list consisting of about thirteen thousand names, including about one thousand seven hundred physicians; that the name of Dr. Smythe appeared on this mailing list; and that it was customary to mail the publications of the board to the people whose names appeared on this list. The defendant testified that he had never receivd a copy of these regulations, and that he had no knowledge of the existence of the rule requiring these reports to be made on the first day of the month, and that, prior to the administration of Dr. A. J. Ware as county health officer, it had been the custom in that county to file these reports on or about the 10th day of the month, and that in so doing the physicians were acting under the directions of the county health officers.

There is no presumption that appellant had knowledge of a mere rule or regulation of the state board of health, and under the evidence in this record the peremptory instruction requested by defendant should have been granted.

*Reversed and appellant discharged.*